Tina Wolfson (SBN 174806)
Robert Ahdoot (SBN 172098)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
twolfson@ahdootwolfson.com
rahdoot@ahdootwolfson.com

Peter A. Muhic (*pro hac vice* to be filed)
**LeVAN MUHIC STAPLETON LLC**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 561-1500
pmuhic@levanmuhic.com

*Counsel for Plaintiffs and the Class*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOL KIM, AARON MANDELL, ALISSA BETH COHEN MANDELL, MATTIAS ASTROM, ARPAN PATEL, ANUPAMA VIVEK, JERIN ZACHARIAH, and PETER BURNS, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br><br>TESLA, INC.,<br><br>                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>JURY TRIAL DEMANDED |

Plaintiffs, Sol Kim, Aaron Mandell, Alissa Beth Cohen Mandell, Mattias Astrom, Arpan Patel, Anupama Vivek, Jerin Zachariah and Peter Burns ("Plaintiffs"), by and through their attorneys, on behalf of themselves and all others similarly situated, based upon personal knowledge with respect to their own circumstances and based upon information and belief and/or the investigation of their counsel as to all other allegations, allege the following against defendant Tesla, Inc. ("Defendant" or "Tesla"):

**INTRODUCTION**

1.     Tesla sold Plaintiffs and other Class members high-priced Tesla Solar Roof systems. After completing the sales agreements, and while the consumers have been making plans for the installations, in classic bait-and-switch fashion, Tesla is now informing these consumers they must pay upwards of a 50% price hike on the cost of the Solar Roof if they want to proceed with the installation—and if they do not pay promptly, they risk losing their place in line for installation. This is nothing short of a deceptive and unfair scheme.

2.     Plaintiffs bring this action to stop Tesla from unfairly and unlawfully representing to consumers nationwide that they have no choice but to cancel their valid contracts for Tesla Solar Roof systems or else agree to Tesla's after-the-fact substantial and unilateral price increases.

3.     Plaintiffs also seek to hold Tesla accountable for its deceptive, unlawful, and unjust business practices in luring consumers into signing contracts for its Solar Roof system for agreed-upon prices and agreed-upon delivery dates, and then unilaterally switching the terms of the deal, imposing substantial price increases, refusing to perform as promised, and deceiving consumers into cancelling their valid contracts and/or accepting Tesla's significantly increased prices.

4.     While known best for its electric cars, Tesla entered the market for solar panels with its 2016 acquisition of SolarCity for $2.6 billion.  SolarCity was founded by two cousins of Tesla CEO Elon Musk, and Musk served as chairman of SolarCity's board and was the company's largest shareholder.

5.     Soon after announcing the acquisition, Tesla revealed a new product from SolarCity: the Solar Roof. The Solar Roof consists of roof tiles—which resemble ordinary roof shingles, unlike traditional solar panels that sit on top of the roof—with embedded photovoltaic (PV) cells capable of

- 1 -

generating electricity from the sun.  The Solar Roof system can also include a "Powerwall," which allows a homeowner to store energy generated by the Solar Roof for use when needed, such as during a utility power outage.

6.     Tesla has aggressively marketed the Solar Roof system and promoted the attributes and benefits of the Solar Roof system to Plaintiffs and all consumers across the country.  Musk has touted the product as "[a] roof that looks better than normal roofs, generates electricity longer, lasts longer, has better insulation, and has an installed cost that is less than a normal roof plus the cost of electricity."

7.     After acquiring SolarCity, however, Tesla has struggled with its solar operations. While the Solar Roof was originally scheduled to launch in 2017, design issues delayed its release until 2018.  Tesla also encountered various difficulties with its own processes along with the technology.  As Musk later admitted, with the first two versions of the Solar Roof, Tesla was "still sort of figuring things out" as it went along.

8.     In late 2019, Tesla released Version 3 of the Solar Roof.  With this version, Tesla promised several improvements over the previous two versions, including faster installation times and lower costs. The Solar Roof, according to Musk, "is finally ready for the big time," and "this product is going to be incredible." In short, Musk bragged, Version 3 "is a killer product."

9.     Plaintiffs all agreed to purchase a Solar Roof from Tesla and have been awaiting installation. In doing so, Plaintiffs submitted their orders, paid deposits, agreed to a total project cost based on the specific characteristics of their roofs, and executed contracts with Tesla.

10.     Plaintiffs also took additional steps as necessary to prepare for the Solar Roof installations, including preparing their properties by removing trees, upgrading necessary components for installation, overseeing and/or applying for permits, and arranging for payment whether through financing or converting investments to cash.

11.     In early April 2021, however, Tesla disavowed its contracts with Plaintiffs and the putative class members nationwide, unilaterally (and substantially) increased the previously agreed-upon prices, and represented that it would not proceed as promised.  In many instances, Tesla

increased the price of components by 50% or more, which equates to thousands or tens of thousands of dollars per consumer.

12.    And even though Plaintiffs and many putative class members have been waiting for many months or longer and were expecting installation to begin soon, Tesla instructed that if they want to "keep their place in line" for installation, they must execute new contracts promptly. That is because, Tesla told them, the company will install Solar Roofs on a first-come, first-served basis going forward.

13.    Tesla's actions are unlawful, unjust and deceptive and should not be permitted to stand. Tesla is reneging on its promises and obligations to Plaintiffs and the putative class members and systematically breaching its contracts with them.

14.    Tesla claims that the price increases are due to the "complexity" of Plaintiffs' roofs. This itself is a misrepresentation. Nothing has changed with Plaintiffs' roofs since the time Tesla completed its inspections, surveys and/or analyses that resulted in the agreed-to contract prices. In reality, Tesla simply implemented a company-wide update to its pricing structure to increase its profits. Tesla now is unfairly coercing Plaintiffs and the putative class members to pay significantly more than they had bargained for with Tesla.

15.    Tesla's conduct—which emanates from its California headquarters—violates California's consumer protection laws and affects consumers nationwide. Plaintiffs and the putative class members have, and will, incur substantial economic harm and further harm because of Tesla's conduct. Many Plaintiffs and consumers across the country were days or weeks from installation and now are left to either agree to Tesla's price hikes under duress or be forced to scramble for some type of alterative.

16.    Plaintiffs and the putative class members ask that Tesla be enjoined from engaging in its unfair and unlawful conduct and/or ordered to make restitution and be subject to other equitable measures appropriate.

**PARTIES**

17.    Plaintiff Sol Kim is an adult individual and at all times relevant has been a citizen and resident of California.

- 3 -

18.     Plaintiffs Aaron Mandell and Alissa Beth Cohen Mandell are adult individuals and at all times relevant citizens and residents of Florida.

19.     Plaintiff Mattias Astrom is an adult individual and at all times relevant has been a citizen and resident of Massachusetts.

20.     Plaintiff Arpan Patel is an adult individual and at all times relevant has been a citizen and resident of New Jersey.

21.     Plaintiff Anupama Vivek is an adult individual and at all times relevant has been a citizen and resident of New York.

22.     Plaintiff Jerin Zachariah is an adult individual and at all times relevant has been a citizen and resident of New York.

23.     Plaintiff Peter Burns is an adult individual and at all times relevant has been a citizen and resident of Pennsylvania.

24.     Defendant, Tesla, Inc., is a California corporation with its headquarters and principal place of business located at 3500 Deer Creek Road, Palo Alto, CA.

25.     At all relevant times, Defendant acted through its authorized employees and agents in marketing, selling and installing Solar Roof and energy storage systems and communicating with Plaintiffs and the putative class members about the Solar Roof systems.

## JURISDICTION AND VENUE

26.     This Court has original diversity jurisdiction, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA") because one or more members of the proposed Class are citizens of states different from Defendant's home state, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 members in the proposed Class.

27.     This Court has personal jurisdiction over Plaintiffs because Plaintiff Kim is a citizen and resident of California and all Plaintiffs submit to the Court's jurisdiction.

28.     This Court has both general and specific personal jurisdiction over Defendant because Tesla has its principal place of business and headquarters in California and operates and conducts substantial business throughout California.

CLASS ACTION COMPLAINT

29.   Venue is proper in this District, under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, Defendant's decision-makers are based in this District, and because Defendant resides in this District under 28 U.S.C. § 1391(c)(2).

<u>**FACTS**</u>

<u>**Tesla's Solar Roof Product**</u>

30.   Tesla promotes its Solar Roof system as a product of the future offering numerous benefits to consumers.

31.   Tesla, for example, touts the Solar Roof's beautiful design.  Unlike traditional solar panels, which sit on top of the roof, the Solar Roof replaces the existing roof with its roof tiles. Tesla highlights this aesthetic benefit on its website with a picture (*see* Figure 1) and a promise: "Replace your current roof with Solar Roof and power your home with a fully integrated solar system. With a seamless design, each tile looks great up-close or from the street, complementing your home's architecture." As Musk put it, "When you have [the Solar Roof] installed on your house, you'll have the best roof in the neighborhood. The aesthetics are that good."



**Figure 1**

32.   Tesla also represents that the Solar Roof is affordable and actually cheaper than buying electricity from the power grid. On its website, Tesla tells consumers: "Power your home at the lowest price per watt of any national provider and take control of your monthly electric bill."

33.   Tesla also promises that the Solar Roof is more durable than a standard roofing tile. As Tesla explains on its website, "Solar Roof tiles are more than three times stronger than standard

roofing tiles and are engineered for all-weather protection. With a 25-year warranty, Solar Roof lasts longer than an average roof and protects your home for decades to come."

34.    Tesla also markets the Solar Roof as being environmentally friendly. Tesla tells consumers they can reduce their carbon footprint with the Solar Roof: "By switching to solar, you will be reducing your carbon emissions and environmental impact of energy use."

35.    In summary, Musk has stated: "It's looking quite promising that a solar roof will actually cost less than a normal roof before you even take the value of electricity into account. So the basic proposition would be, 'Would you like a roof that looks better than a normal roof, lasts twice as long, costs less and by the way generates electricity?' It's like, why would you get anything else?"

36.    With this marketing, which is uniform and extends nationwide, Tesla has drawn strong interest in its Solar Roof from consumers, including from Plaintiffs, who all signed contracts and have been waiting for installation of their Solar Roof systems because of these features and others.

**The Solar Roof Purchasing Process**

37.    Plaintiffs all entered contracts with Tesla for the purchase of a Solar Roof.  For many Plaintiffs, and consumers nationwide, this was a months-long process.

38.    Tesla attempts to break the ultimate contracting process down into several steps. First, on Tesla's website, consumers give Tesla their address and current electricity usage.  Based on this information, Tesla calculates the measurements of the consumer's roof and provides a suggested size based on the consumer's electricity consumption and roof size.  Tesla then gives the consumer an estimated price based on these initial measurements and offers the consumer the option to pre-order by paying a deposit.

39.     Second, Tesla identifies any anomalies or unique shapes in the consumer's roof and recommends an appropriate size of the solar array on the roof.  In many instances, Tesla had field representatives visit Plaintiffs' and other consumers' homes; and otherwise, or in conjunction with that, Tesla uses a high-tech approach and utilizes aerial imagery and 3D modeling to determine the consumer's "custom design."  *See* Figure 2.



**Figure 2**

40.     A Tesla representative may then conduct an in-person inspection of the consumer's roof "to confirm no additional roof or site repairs are required." The consumers reasonably and understandably rely on Tesla's assurances that it has performed its due diligence in setting pricing.

41.     Third, the consumer executes a contract, which is the purchase agreement for the Solar Roof.  This contract includes the Solar Roof system specifications and the agreed-to price based on those specifications.  Because consumers enter this purchase agreement after undergoing Tesla's extensive review phase, they reasonably rely on the contract price to be the final price for the project. The only price changes from that point forward would be for mutually agreed-to change orders, or

CLASS ACTION COMPLAINT

legitimately "unforeseen" circumstances provided for, such as when the existing roof is removed and it is determined that the underlying sheathing needs to repaired or replaced.

42.     Upon information and belief, Tesla knowingly marketed, advertised, and promised to provide and install its Solar Roof systems at prices that the company knew it would not honor and on delivery dates the company knew it could not meet.

**Tesla's Price Increase on the Solar Roof**

43.     In early April 2021, after Plaintiffs and the putative class members had executed their purchase agreements, Tesla sent them a form email stating that the company was increasing the agreed-upon contractual prices for their Solar Roof systems because of "individual roof complexity." Tesla told Plaintiffs and the putative class members that they needed to go to their online accounts and accept the change before Tesla would move forward with their Solar Roof systems.

44.     Tesla is sending frequent notifications to Plaintiffs and the Class as below:

## Your Solar Roof and Powerwall Project Requires Your Attention

We have not been able to successfully reach you regarding the items pending action in your Tesla Account. If you are still interested in moving your project forward, complete the items in your Tesla Account.

Complete the items and check your project status in your Tesla Account.

**TESLA ACCOUNT**

45.     Tesla also unfairly, unlawfully and deceptively tries to coerce and induce existing customers to agree to Tesla's unilateral price increase by advising the consumers—notwithstanding that many have been waiting months or longer for installation—that Tesla now "will be prioritizing customers based on the order in which they accept their updated agreements."

CLASS ACTION COMPLAINT

46.     Tesla is also deceiving and misleading the Plaintiffs and the public by making it appear that it always had a pricing provision on its website and their online accounts for different roof "complexity" but in reality, Tesla recently revised its website to include such a provision.

47.     Plaintiffs and the putative class members agreed to contracts long ago and were promised installation was being scheduled.  For Tesla to now not only demand significantly increased payments but to also be re-scheduling installations based on the date when people agree to its demands is an unfair, unlawful, and deceitful business practice which should be halted immediately.

48.     According to a Tesla Project Advisor, the price increase was part of a "companywide update to the pricing structure" rather than being specific to an individual.

49.     This update to previously agreed-to pricing occurred in the same month that Tesla announced record profits and it was revealed that an additional $32 billion in Tesla stock options had vested with Musk.

50.     During an April 2021 earning call, Musk made clear that Tesla placed the importance of additional profits over the sanctity of its contracts or its relationships with its customers and offered only that Tesla had "made some significant mistakes in assessing the difficulty of certain roofs" and would not risk losing money by honoring its contracts.

51.     Nothing changed to Plaintiffs' roofs from the time they entered their purchase agreements that would justify Tesla's price increases and refusal to perform as agreed.

52.     Plaintiffs should not be forced to pay more than they bargained for, nor should they face further installation delays if they do not promptly agree to the price increases.  Plaintiffs fell victim to Tesla's bait and switch. Plaintiffs reasonably relied on Tesla's representations as to the products it would provide, the price it would charge based on its assessment of their properties, and the dates when the installations would occur.

53.     Plaintiffs and consumers nationwide have suffered economic injuries due to Tesla's unfair, unlawful and deceptive conduct and will continue to incur additional harm.  Among other things, Plaintiffs have lost the use of their monetary deposits while waiting for Tesla to perform; Plaintiffs forfeited the chance to explore other roofing or solar options for many months—and even longer—due to their reasonable expectation that Tesla would perform as promised; certain Plaintiffs

- 9 -

have incurred financing-related and transactional expenses; and, in addition to being deprived of a new physical roof, Plaintiffs also are being deprived of the ability to generate and store their own power for their homes and/or vehicles with the Solar Roof system.

**Plaintiff Sol Kim**

54.     After many months of planning and discussions with Plaintiff and Tesla, on February 14, 2021, Plaintiff Kim executed a contract with Tesla for the purchase and installation of a solar roof system for his home in Fullerton, California.  The agreed-to price was $39,658.44.

55.     Plaintiff Kim's online account confirmed "Agreement Completed" on February 14, 2021.

56.     Plaintiff Kim refinanced his mortgage to utilize equity from his home to pay for the purchase.

57.     On or about April 10, 2021, Tesla emailed Plaintiff to advise that it was increasing his pricing.  Even after including a "free" powerwall, Tesla now demands $52,337.30, which is a more than 30% increase.

58.     Tesla is repeatedly sending Plaintiff Kim emails to prompt him to accept the new pricing or cancel his contract.

59.     Given the fact that Plaintiff already has a binding agreement for his project, it is unfair, deceptive and misleading for Tesla to represent that Plaintiff Kim needs to click on his account and accept Tesla's price increase in order to move ahead with the project.

60.     In an email dated April 13, 2021, Tesla's Project Advisor for Plaintiff's Kim's account advised Plaintiff that the price increase "was a company wide update to the pricing structure and did not only apply to your project."

61.     Plaintiff has suffered economic harm as a result of Tesla's conduct and will continue to incur harm.

**Aaron and Alissa Beth Cohen Mandell ("Plaintiff Mandell")**

62.     After more than eight months of planning and discussions, on March 16, 2021, Plaintiff Mandell executed a contract with Tesla for the purchase and installation of a solar roof system for their home in Sarasota, Florida.

63.     After Tesla inspected the home and finalized the design, the final agreed-to price after some adjustments was $64,424.31.

64.     Plaintiff Mandell took out a personal loan after executing the contract in order to finance the purchase price.  Plaintiff is incurring interest expenses on that loan.

65.     Plaintiff expended efforts to obtain permits for the project.

66.     On or about April 10, 2021, Tesla emailed Plaintiff to advise that it was increasing the pricing and modifying the design, which requires a new permit.  Even after including a "free" powerwall, Tesla now demands $85,859.24 for the project, which is a more than 30% increase.

67.     Plaintiff has suffered economic harm as a result of Tesla's conduct and will continue to incur harm.

**Plaintiff Mattias Astrom**

68.     Plaintiff first placed an order for a Solar Roof system back in 2017 for his home in Lexington, MA.  At that time, he paid a $1,000 deposit and ordered a system with a 42.27 kw capacity, but after waiting more than three years for Tesla to perform, he cancelled that order in December 2020.  Plaintiff still awaits return of that deposit.

69.     On January 10, 2021, Plaintiff placed a new order for a Solar Roof system with 9 powerwalls but Tesla advised the capacity could be only 12.51 kw.  Plaintiff paid a $100 deposit and executed the contract.  The agreed-to price was $150,013.

70.     On April 10, 2021, Tesla emailed Plaintiff to advise that due to roof "complexity" the price of his project was increasing.  Instead of the agreed-upon price of $150,013, Tesla advised that it was unilaterally increasing the price to $228,008, which is a more than 50% increase.

71.     That price increase includes one "free" powerwall.

72.     Tesla is sending repeated emails to Plaintiff and has encouraged him to accept the price increase or cancel his order.

73.     Plaintiff has suffered economic harm as a result of Tesla's conduct and will continue to incur harm.

**Plaintiff Arpan Patel**

74.     Plaintiff Patel is having a new home constructed in Randolph, New Jersey.

- 11 -

75.     After many months of dealing with Tesla, and delays since November 2020, Tesla finally prepared a contract for the purchase and installation of a solar roof energy system for the home.  Plaintiff Patel executed the contract on March 2, 2021.

76.     The agreed-to price for the solar energy system was $89,246.82.

77.     The home is partially constructed and is awaiting installation of the roof.

78.     Plaintiff Patel is incurring financing and carrying costs for the construction of the home, which increase with any delays in construction.

79.     On or about April 10, 2021, Tesla emailed Plaintiff to advise that it was increasing his pricing.  Even after including a "free" powerwall, Tesla now demands $119,316.65 which is a more than 33% increase.

80.     Plaintiff has a partially constructed home.  The construction schedule and financing were determined based upon the pricing and schedule that had been agreed to with Tesla prior to April 10, 2021.

81.     Plaintiff has suffered economic harm as a result of Tesla's conduct and will continue to incur harm.

**Plaintiff Anupama Vivek**

82.     Plaintiff has been making efforts since 2018 to have a Tesla solar roof energy system installed in her home in Roslyn Heights, New York.

83.     Plaintiff Vivek initially signed a contract with Tesla on March 21, 2018, but the town would not authorize permits at that time because the home is in a historic district.  Tesla inspected Plaintiff's home at that time.

84.     The town subsequently advised Plaintiff that it may allow solar roof tiles to be installed on the home.

85.     On April 20, 2020, plaintiff paid a $1,000 deposit and signed a contract with Tesla for the purchase and installation of a solar roof system for the home.  This included one powerwall.  Tesla again inspected Plaintiff's home at that time.

86.     After signing the contract in April 2020, Plaintiff has been waiting for Tesla to perform.

CLASS ACTION COMPLAINT

87.     On February 24, 2021, Plaintiff did a change order simply to add another powerwall because she had decided to buy a Tesla vehicle.  At that time, Tesla inspected the home for a third time.

88.     On March 28, 2021, Tesla sent a new contract to add $4,214 in roof preparation and pre-construction costs.  Plaintiff accepted that change and signed the revised contract with the total agreed-to price of $58,805.48.

89.     On April 16, 2021, Tesla sent Plaintiff an email stating there was action required on her part. Upon checking her Tesla account, she saw that while the system was the same as she had previously agreed to, Tesla had increased the contract price to $77,333.03, even accounting for a "free" powerwall, which accounted for a more than 30% increase.

90.     Plaintiff refinanced her mortgage and increased the loan amount in December 2020 in order to pay for the Solar Roof project.  She has and is incurring charges in connection with the loan.

91.     Plaintiff has suffered economic harm as a result of Tesla's conduct and will continue to incur harm.

**Plaintiff Jerin Zachariah**

92.     After working with Tesla since September 2020 with respect to the design and purchase of a Solar Roof, Plaintiff executed a contract on March 9, 2021 for a Tesla Solar Roof. After months of pre-contractual discussions, the agreed-upon price was $42,998.20.

93.     Plaintiff is having a house constructed in Pleasantville, NY and needs to have a roof installed.  He provided Tesla with all drawings and specifications and coordinated with Tesla and his builder for the Tesla Solar Roof to be used in lieu of other roofing options.

94.     Construction of the house is underway. The construction schedule for Plaintiff's house depends upon Tesla delivering and installing the Solar Roof without delay, and his construction financing with his bank depends upon Tesla providing the Solar Roof for the price agreed upon.

95.     On or about April 10, 2021, Tesla advised that it was increasing the price of Plaintiff's Solar Roof from $42,998 to $60,253 (and including a "free" powerwall, which he did not order). This is an approximate 40% increase in price.

96.     Tesla is sending frequent emails/texts to Plaintiff to accept the new contract terms unilaterally imposed by Tesla.

97.     Plaintiff is left with the choice of delaying construction (either while trying to convince Tesla to reconsider its price increase or while trying to find an alternative roof at this late stage of the construction process) or agreeing to Tesla's price increase under duress and trying to arrange alternative means of financing for it.

98.     Plaintiff has suffered economic harm as a result of Tesla's conduct and will continue to incur harm

**Plaintiff Peter Burns**

99.     Plaintiff has been working with Tesla since 2019 to have a solar roof system installed in his home in Doylestown, PA.  His order was confirmed on November 3, 2019.

100.    Plaintiff executed a contract with Tesla on April 14, 2020 for the purchase and installation of a solar roof system.  The system was sized to be 12.92 kw output.

101.    In anticipation of the Tesla solar roof system, in July 2020, Plaintiff upgraded the electric in the home from 150 amps to 200 amps, paying $2100 for such work.  Before executing his contract, in preparation for a solar installation, Plaintiff incurred significant expense clearing trees from his property.

102.    On August 11, 2020, Plaintiff received an email from Tesla stating, "Current time frames for installation in your area would be about 4-6 months."

103.    In anticipation of the installation, Plaintiff began selling stock in mid-2020 to have sufficient cash available to pay for the project.

104.    After a site inspection by Tesla and certain revisions, the agreed-upon price in the revised contract executed by Plaintiff on March 17, 2021 was $64,519.05.  The system at that time was designed to be 10.52 kw output.

105.    On March 29, 2021, Tesla sent Plaintiff an email confirming his Solar Roof installation for May 4, 2021.

106.    On or about April 10, 2021, Tesla advised that it was increasing the price for the system already agreed to.  Tesla now demands a total of $89,913.58 for the project, which includes a "free" powerwall and an additional charge of approximately $6,000 for roof decking and repairs.

107.    The new contract price includes an increase in the price of the Solar Roof alone from $42,637 to $67,790, which is an approximately 60% increase.

108.    Plaintiff has suffered economic harm as a result of Tesla's conduct and will continue to incur harm.

## CLASS ALLEGATIONS

109.    Plaintiffs bring this action, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and/or (b)(3), on behalf of the following nationwide Class for the maximum time period allowable by law:

> All persons with whom Tesla entered into a contract for the purchase and/or installation of a Solar Roof and/or Powerwall energy storage system in the United States and whom Tesla has notified, on or after April 1, 2021, must pay an increased price as a condition for performance.

110.    Plaintiffs reserve the right to revise the definition of the Class based upon subsequently discovered information and reserve the right to establish sub-classes where appropriate.

111.    The Class excludes Defendants and any entity in which Defendants have a controlling interest, as well as their officers, directors, legal representatives, successors, and assigns. The Class also excludes government entities and judicial officers that have any role in adjudicating this matter.

112.    The Class is so numerous that joinder of all members is impracticable. Plaintiffs believe that there are in excess of 100 Class members in the nation.

113.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

114.    Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

CLASS ACTION COMPLAINT

115.    Plaintiffs' claims are typical of the claims of the Class that Plaintiffs seek to represent. As alleged herein, Plaintiffs and Class members sustained harm arising out of the same actions and conduct of Defendants.

116.    Common questions of law and fact exist to all members of the Class and predominate over any issues solely affecting individual members of the Class. The common and predominating questions of law and fact include, but are not limited to:

- Whether Defendants' actions are unfair, unlawful or further violative of the UCL;

- Whether Defendant made material misrepresentations prohibited by the UCL;

- Whether Defendant violated the CLRA; and

- Whether injunctive relief, restitution or other relief is warranted.

117.    Plaintiffs are willing and prepared to serve the Class in a representative capacity and fulfill all such obligations duties.

118.    Plaintiffs will fairly and adequately represent and protect the interests of the Class and have no interests adverse to or in conflict with the interests of any of the other members of the Class.

119.    Plaintiffs will vigorously prosecute this action. Plaintiffs have engaged the services of the undersigned counsel. Counsel are experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Class.

120.    Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

121.    The Class may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Class, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Class.

CLASS ACTION COMPLAINT

122.    The interest of members within the Class in individually controlling the prosecution of separate actions is theoretical and not practical. The Class has a high degree of similarity and cohesiveness, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

123.    The nature of notice to the Class, upon certification of the Class, is by best notice practicable under the circumstances including, amongst other things, direct mail, email, and/or publication via the internet.

**COUNT I**
**PUBLIC INJUNCTIVE RELIEF FOR VIOLATIONS OF**
**CALIFORNIA BUSINESS & PROFESSIONS CODE**
**(California Code § 17200, *et seq*.)**

124.    Plaintiffs incorporate by reference all prior allegations of this complaint as if fully set forth herein.

125.    Plaintiffs bring this count on behalf of themselves, the Class and/or the general public both in the State of California and throughout the country/or for the primary benefit of the general public, and their benefit only incidentally as members of the general public, to enjoin conduct injurious to the general public.

126.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

127.    By its conduct, Tesla has and is continuing to engage in unfair competition and unlawful, unfair, and/or deceptive business practices, including the violation of consumer protection statutes.

128.    Defendant's unfair or deceptive acts or practices occurred and continue to occur repeatedly in Defendants' trade or business and were and are capable of deceiving a substantial portion of the purchasing public.

129.    As has become apparent from Tesla's conduct, when dealing with Plaintiffs and the public and entering into contracts, Tesla made material misrepresentations about its ability and

- 17 -

willingness to provide Solar Roof systems as promised, including in the timeframes represented and for the price promised.

130.    Tesla has and is continuing to make misrepresentations to Plaintiffs, the Class and the general public about the need to disavow existing contracts, enter into new contracts and Tesla's purported justification for demanding price increases.

131.    As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs and the other Class members have suffered and will continue to suffer economic harm.

132.    Defendant should be enjoined from continuing its unlawful and unjust business practices, coercing the Plaintiffs and the Class into executing new contracts, from disavowing its obligations, and from demanding additional sums as a condition of performance.

133.    Defendant also should be required to make restitution to Plaintiffs and the other Class members pursuant to §§ 17203 and 17204 of the Business & Professions Code.

134.    Defendant should be required to pay Plaintiffs' legal fees and expenses pursuant to Cal. Civ. Proc. Code § 1021.5 for enforcing this important public right.

**COUNT II**
**PUBLIC INJUCTIVE RELIEF FOR VIOLATIONS OF**
**CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**
**(California Civil Code § 1750, *et seq*.)**

135.    Plaintiffs incorporate by reference all prior allegations of this complaint as if fully set forth herein.

136.    Plaintiffs bring this Count on behalf of themselves, the Class and/or the general public both in the State of California and throughout the country/or for the primary benefit of the general public, and their benefit only incidentally as members of the general public, to enjoin conduct injurious to the general public.

137.    The California Consumer Legal Remedies Act ("CLRA") enumerates prohibited "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer."

138.    The CLRA is to be "liberally [c]onstrued and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."

139.    Tesla's Solar Roof is a "good" under Cal. Civ. Code § 1761(a) and Tesla's design, project review, and installation services constitute "services" under Cal. Civ. Code § 1761(b).

140.    Plaintiffs are "consumer[s]" under Cal. Civ. Code § 1761(d) and have suffered damage as a result of the use or employment by Tesla of the methods, acts, or practices set forth herein which are unlawful under Cal. Civ. Code § 1770(a).

141.    In order to protect and enforce important public rights and restrain conduct injurious to the general public, Plaintiffs, on behalf of the general public, request that the Court enter a permanent injunction prohibiting Tesla, its agents, servants, employees, and all persons acting in concert with it, from engaging in the following conduct with respect to the sale of the Solar Roof:

      a)  Misrepresenting the authority of a salesperson, representative or agent to negotiate the final terms of a transaction with a consumer, in violation of, *inter alia*, Cal. Civ. Code § 1770(a)(18);

      b)  Using deceptive representations in violation of, *inter alia*, Cal. Civ. Code § 1770(a)(18);

      c)  Representing that a transaction involves or confers rights, remedies or obligations which it does not have or involve, in violation of, *inter alia*, Cal. Civ. Code § 1770(a)(14);

      d)  Representing that Defendant's design and project review services have the use or benefit of ascertaining appropriate pricing and detecting any additional costs associated with the purchase of a Solar Roof at an initial stage, when they do not, in violation of, *inter alia*, Cal. Civ. Code § 1770(a)(5);

      e)  Advertising to the general public that the Solar Roof system will cost a certain amount while intending to charge consumers more than that advertised amount, in violation of, *inter alia*, Cal. Civ. Code § 1770(a)(9);

f)  Advertising to the general public that the Solar Roof system can be delivered and installed in certain timeframe, while knowing that it cannot, in violation of, *inter alia*, Cal. Civ. Code § 1770(a)(9);

g)  Representing that the Solar Roofs have an unforeseen "complexity" justifying increased charges, when in fact, they do not, in violation of, *inter alia*, Cal. Civ. Code § 1770(a)(5);

h)  Representing that additional, unforeseen repair services are needed in order to install the Solar Roof, when they are not, in violation of Cal. Civ. Code § 1770(a)(15);

i)  Representing that Defendant will only change the contract price if unforeseen repairs or additional installation-related work is needed, in violation of Cal. Civ. Code § 1770(a)( 7) & (16); and/or

j)  Offering to enter into contractual relationships with the general public governed by unconscionable contract clauses, in violation of Cal. Civ. Code § 1770(a)(19).

142.  Tesla knows, knew, or should have known, that its representations and advertisements about the nature and quality of its services and the total cost of its Solar Roof systems contracts are and were false or misleading.

143.  As a result of Defendant's unlawful conduct, Plaintiffs have suffered economic harm as stated herein and Plaintiffs and the public are being subjected to further and continuing harm.

144.  Plaintiffs seek injunctive relief under this count.

145.  Plaintiffs also seek an award of attorneys' fees pursuant to the private attorney general doctrine, codified at Cal. Civ. Proc. Code § 1021.5, for enforcing important rights "affecting the public interest."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment against Defendant and in favor of Plaintiffs and the Class, and award the following relief:

CLASS ACTION COMPLAINT

A. An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as representatives of the Classes and Plaintiffs' counsel as counsel for the Class;

B. An order enjoining Defendants from continuing the conduct and practices alleged above;

C. An order awarding restitution and/or disgorgement;

D. Equitable relief as appropriate;

F. An award of costs, expenses, and attorneys' fees as permitted by law; and,

G. Such other or further relief as the Court may deem appropriate, just, and equitable.

### JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of any and all issues in this action so triable

Dated: May 17, 2021

Respectfully submitted,

**AHDOOT & WOLFSON, PC**

By: */s/ Tina Wolfson*
Tina Wolfson (SBN 174806)
Robert Ahdoot (SBN 172098)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
twolfson@ahdootwolfson.com
rahdoot@ahdootwolfson.com

Andrew W. Ferich (*pro hac vice* to be filed)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Rd., Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
aferich@ahdootwolfson.com

Peter A. Muhic (*pro hac vice* to be filed)
**LeVAN MUHIC STAPLETON LLC**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 561-1500
Facsimile: (914) 273-2563
pmuhic@levanmuhic.com

CLASS ACTION COMPLAINT

Edwin J. Kilpela, Jr (*pro hac vice* to be filed)
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
ekilpela@carlsonlynch.com

Katrina Carroll (*pro hac vice* to be filed)
**CARLSON LYNCH LLP**
111 W. Washington Street Ste. 1240
Chicago, IL 60602
Telephone: 312.750.1265
kcarroll@carlsonlynch.com

Jonathan M. Jagher (*pro hac vice* to be filed)
Kimberly A. Justice (*pro hac vice* to be filed)
D. Patrick Huyett (*pro hac vice* to be filed)
**FREED KANNER LONDON &**
 **MILLEN, LLC**
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6487
Facsimile:  (224) 632-4521
jjagher@fklmlaw.com
kjustice@fklmlaw.com
phuyett@fklmlaw.com

*Counsel for Plaintiffs and the Class*

CLASS ACTION COMPLAINT